As I look around I notice that we have three lawyers and five defendants no pardon me four lawyers five okay fine all right gentlemen before we start the clock running have you decided how you're going to divide the time five minutes apiece not quite your honor I believe I was going to address the first issue John Lemon for Jesus Barragan I was going to address the prosecutorial misconduct issue I have six minutes and I'd also like to address the sentencing issue for my so you have six minutes correct and you're going to discuss some conviction claim conviction errors and some sentencing errors right all right as you go from one subject to the other give us a heads up so we can take notes on those different subjects I will your honor it's actually just going to be two and if I could save one minute for rebuttal I do that you have to do that by yourself if you've got six minutes save one minute when you see five minutes stop talking all right thank you all right please state your name good morning your honors John Lemon for Jesus Barragan your honors this court is consistently held that a prosecutor may not ask a jury to protect community values or make a statement with its verdict here the prosecutor started his closing argument by urging the jurors to stand up for the community and say no more to the defendants he returned to this theme numerous times throughout the course of his argument repeatedly telling the jurors enough is enough no more and it is time to put an end to that because you have limited time let the argument was improper have you demonstrated prejudice well this is there first of all I believe the standard is is harmlessness beyond a reasonable doubt well no it's good I'm not sure it's constant I'm not sure it's constitutional error is it well I mean it was a misconduct case right and fundamentally this is a question of fairness which I think has to be governed by the Fifth Amendment okay well assume it's harmlessness for a substantial evidence in this case including a tape of your client why why should we tell me what tell me why it wasn't harmless well I obviously can't speak for the other defendants in this right the other defendants and that's the other ones I think the evidence is strongest but so speak to your client well I think the first thing is that this court even where there is a I mean in this case there were at least seven defense objections that were overruled the trial court denied Berrigan's motion for a mistrial and refused to give a curative instruction now let's assume she aired right and the failure to give a curative instruction is is huge here this court in Sanchez and I believe in Weatherspoon too and in an unpublished case called Cruz has reversed where there was no where there was no objection but even on plain-air review this court says we can't find this was this was harmless without a curative instruction so I think it's the absence of the curative particularly where I was objecting repeatedly and asking for a mistrial that under those circumstances this court can't find that this was harmless I know you've got limited time I want to ask you about the sentencing issues two questions although the district judge didn't cite them when I look at the pre-sentence report it is that true there was actually no pre-sentence report well I look at the record of convictions the record seems to indicate that there are two prior section 211 convictions but the judge only relies on one are there two do we know okay second question is if there's only one and the question is whether the prior 11379 conviction is for a controlled substance offense we have a case pending on that issue you're where should we should we await the outcome of that case to do because if in fact if in fact Martinez Lopez comes out the wrong way from your perspective then this sentencing issue goes away does it not well it would knock out the 11379 no one more might it might sustain it one way or the other right and that's what I said in my that would so the career offender issue depends on the outcome of Martinez Lopez in the one of the career offender predicates but not the other right because you don't doubt you don't you don't attack the 211 can I did you did okay the recent Supreme Court case that I think came out since I filed a reply brief doesn't help me I wasn't going to address the 211 right now okay no at least by and I understand I was when I looked in the record there seemed to be a reference to two section 211 convictions and I can't I don't nobody seems to rely on the second one but if we were to send it back the district judge could deal with that right but again there was no pre-sentence report here the trial judge was retiring and we wanted to be sentenced by the trial judge right but there was a submission of prior records that's what I was looking I miss I mischaracterized it no no I appreciate that I was just gonna say that Mike the big thing for mr. Berrigan is that the trial court and the sentencing court did not arrive at a single guidelines range which is required by that the guidelines themselves it quite plainly says that you arrive at a single guidelines range before for all the counts of conviction you group them all into one before you impose a sentence and here there were four guys there were four and they were all extraordinarily high so if we were to find that that was error your second issue would in effect have to get raised again to the district court when you went back right and so the fact that he had four extraordinarily high guidelines ranges this court is consistently held that that impacts a sentencing courts decision-making when it comes to variance and although the court did vary here that variance could very well have been more substantial heads had the court not been looking at the four extremely high guidelines ranging ranges and I see I'm into my rebuttal minute so if I can stop now thank you thank you good morning your honors I'm Knute Johnson I represent defendant appellant Hector Fernandez I'm going to talk about just two issues with the court permission and that would be that the testimony of boxer Enriquez and also some sentencing issues mr. Fernandez's part one of the we talked about the defense counsel about dividing this up and how we would best approach it from mr. Fernandez's perspective the Enriquez testimony really folds into many of the other issues it folds into the prosecutors opening or closing argument that the call to the improper call to inflame the community and then we have boxer Enriquez's whose testimony was unnecessary there's in the record two other law enforcement witnesses who the government could have called and probably at substantially less expense than having to to pay law enforcement to was involved in numerous acts of terrorizing the community murdering people is your objection to Enriquez testimony a 403 objection it the objection was 403 right I think that so you're not you're not saying that it wasn't probative you're saying that it was unduly prejudicial well I think that the government had the right to try and prove this the structure of the recall organization there were certainly other ways to do it ways that would not inflame the jury and in fact this jury was so frightened by this witness that they were very concerned there were three instances where the jurors told the court that they were scared because of things people in the audience were doing that were completely in councils is it a is it a fair characterization of the record that a lot of the awful details of crimes in which mr. Enriquez was involved was brought out by defense counsel in cross-examination I gather in an effort to impeach mr. Enriquez is that a fair characterization of the record that is a fair characterization and that had to happen once the government opened the door to that and they brought this guy in with all these unnecessary acts the defense had no choice but try to impeach him further and government had to have known that particularly given what was a clearly a into really boxer Enriquez his testimony and what which goes to one of the questions raised which harmlessness what was the harm to Hector well yeah yeah no I wanted to ask you about that because the evidence as to your client seems somewhat stronger than the evidence is to mr. Barragan maybe I'm maybe I mischaracterize it well I would respectfully disagree your honor the jury acquitted mr. Fernandez of the conspiracy to distribute narcotics the another count so what is that our cases seem to suggest that when the jury picks and chooses it's less likely that that price that the misconduct has led to the verdict how do you respond to that because the evidence was so weak against mr. Fernandez overall and this conspiracy to commit a conspiracy to commit a conspiracy which is really what the Rico charge was was so amorphous and was supported against mr. Fernandez by evidence that he wasn't able to confront by tape recordings of an informant who never showed up that it it that was the when the jurors decided to convict him of that that was almost inevitable after the court and the jurors understanding that there really was no evidence to tie him to these narcotics conspiracies to the firearm offense and yet again segwaying in a moment I hope to the sentencing issues the court considered all of those in more than doubling mr. Fernandez a sentence so so under sentencing would you just because I know you're running out of time just tell me briefly what your what your sentencing argument is well it's this that the court considered acquitted conduct it considered conduct that was not part of the case and considered I think that's terrible but donor cases allow the court to do that well I I think that win has the better of it particularly the in a case like this where the government chose not to ask for special verdict forms where the particularly backed by the hearsay evidence of the informant which is really the reason the jury convicted mr. Fernandez was that hearsay evidence I think based on all that the win case is that is the better choice and and let me just say when the court and that to 2e 1.1 says for the multiple counts they are grouped as though their convictions are grouped as convictions you know you don't group unless there is a conviction so I think that internally within the guidelines it requires a conviction before grouping that's what the court in this case did is they grouped all these all this activity as a conviction without proof beyond a reasonable doubt that the defendant was guilty thank you very much thank you good morning John ballast on behalf of Jose Aranda he's the only defendant who pled guilty just so the court is aware there's only one person arguing after me I have four minutes the way we decided and the last defendant has four minutes and the fifth fifth defendant is given his time to the others before I start I would like to tell you that miss Hong informed me and allowed me to represent to the court that the government is conceded error on the third argument in my brief on the that there was a error to add a firearm enhancement when my client was also convicted on the 924 if that's so do we need to address the other issues in other words we vacate the sentence and send it back and I suspect it'll be a different district judge given what then then if the judge makes the same mistakes as to the other two issues that you think judge you can come back up here but maybe she won't maybe the new judge won't well I think that's that's correct the court can go either way the court as long as I have an open record to re-argue it the court just could vacate the sentence we would you if we vacate the sentence on an open and send it back for on an open record have you achieved what you came here to do I think so I'd be fine with that we ought to ask the government whether they're opposed that but if so maybe you can save some extra time for your colleagues I think I'm right on the other two issues you may well you may well be but when we have a concession of error it makes our job easier all right thank you very much mr. balance you good morning everybody pleases I'm Sanji Sophia representing mr. Gutierrez Francisco Gutierrez in this matter you know the only issue that I'm addressing is the the wiretap issue right because the government in your case also concedes there's an error in in sentencing yes and we agree for remand on that matter okay and you know with the wiretap we we argued in our moving papers regarding necessity and in this case it was very clear that the officers could have adduced the information they wanted through either pen registers through surveillance through GPS monitoring through multiple ways to get mr. Gutierrez the information they wanted to do instead of getting a wire tap they didn't show any of that because mr. Gutierrez was in fact on parole during the entire time that the wiretap that they attempted to get before they got the wiretap he was already on parole he checked on his parole officer once a month he every phone call that everyone he made was monitored already I mean he was already he was already known what was going on but the phone that they that the government sought sought for a wiretap was it was his wife's telephone not his own phone wasn't there evidence he was using it I'm sorry wasn't there evidence that he was using it there there was a couple of calls only made to that phone and that was it is your argument that the government government hadn't sufficiently shown the necessity of the wiretap yes wrong so how do we review the district courts determination on that well we start with a de novo argument at the time for the entire wiretap whether or not the standard review is de novo and then of course right but as to this specific finding of necessity which seems to be a case specific finding based on the evidence did we review that also de novo yes your honor the well you would use de novo for the entire whether there was necessity to begin with and then of course you would go into whether or not there was an abuse of discretion well so that's what I'm having some difficulty with tell me what part we review for abuse of discretion and what part we reviewed de novo you'd start with the probable cause so there's two parts of the probable cause we review that de novo yes because because it's just whether a set of facts ends up to probable cause assuming there's probable cause how do we review the district courts determination of necessity under the statute for abuse of discretion yes your honor okay so in that regard your honor obviously we believe that the district court did abuse its discretion but but in in regards to this I said there was multiple ways to get mr. Gutierrez the information that the government was seeking by in fact the GPS monitors where he works what he does where he where he he goes about his business and as a result of that why didn't they take those approaches first the next part of the analysis is the actual affidavit that was used by the government the officers to obtain this didn't explain exactly did they even take those steps all this is some boilerplate arguments but didn't they have a little bit more didn't they say we've tried to cultivate informants but they're all scared we had an informant who was going to help us but then decided not to whether or not that's enough I don't know but they at least alleged more than just boilerplate didn't they yeah they alleged that for all of the all the individuals that they were seeking and that was just boilerplate there's nothing specific to mr. Gutierrez mr. Gutierrez just had two phone calls that came to him and that was enough to make that they can't find any other way to get information on mr. Gutierrez it was a fishing expedition that that this task force wanted to do just to get a bunch of people together whoever they could and mr. Gutierrez just happened to receive a couple of phone calls and that he's involved in this and his enterprise and you know that's just insufficient and and for that we obviously asked the court to to grant to reverse the judgment and suppress the evidence thank you thank you very much all right let's hear from the government good morning follow the same Farraghan Fernandez Gutierrez yes your honor good morning and may it please the is the prosecutor's summation could you start with that because I I find it disturbing sure your honor the provocative elements in this case came from the defendant's actions the jury heard about beatings assaults robberies drive-by shootings when the prosecutor was entitled to say you've heard all this evidence and it's terrible stuff and you should convict them because of it but the prosecutor seems to have said more it sure sounds like a send a message and protect the community argument the very kind of argument we repeatedly said you shouldn't make so defend the argument he made or and what the this court has said is that there cannot be comments that are designed to inflame the jury in this instance the prosecutor's remarks were not designed to inflame the jury the provocative elements were the facts and elements or the facts that were demonstrated throughout the trial but the prosecutor was asking the jury to do through its summation remarks is really summed up in an SCR 4243 where the prosecutor told the jury it's time for some responsibility to back be had it is time for you to tell them that you're responsible for this and you should do so with your verdicts of guilty that's repeatedly upheld and in fact has has stated that telling the jury to act as the conscience of the community or to send a message that's tethered to the evidence is fine so long as it's not designed to inflame or ask the jury to find the defendant guilty on the basis of anything other than the evidence the three-hour summation in this case was devoted entirely to the evidence that was demonstrated at trial and what we heard throughout the trial was that the mr. Berrigan was charged with attempted murder a by car offense as well as to 924 C offenses relating to possession and brandishing and discharge of a firearm those are the facts that the jury sure but the prosecutor said it's finally the chance to stand up and say no more isn't he didn't say they did all this stuff and they're really bad people and you should convict them which is fine and a lot of his argument is along those lines but what about telling the jury that it's their job to stand up and say no more is that's not their job is it no and the court and the prosecutor never suggested their job was to do anything other than to evaluate the evidence and again I'd point to SCR three nine six nine that's another part portion of the prosecutor's summation where he said these individuals need to be held responsible because that was improper about those remarks there's nothing about those remarks that are designed to inflame or to prejudice the jury what the prosecutor asked the defendant or the jury to do is to hold them responsible and this is a quote again from three nine six nine not just for what they conspired to do or agreed they need to be held responsible for what they did do and the only way that gets done is with verdicts by you that's all what the prosecutor asked the jury to do was to consider the facts and evidence that had been introduced at trial every fact he ticked through in the summation remarks that are principally challenged are facts that were demonstrated at trial and that bore on the charges that came in the superseding indictment and so it's in looking at the line that this court has drawn in terms of proper versus improper summation the United States would submit it in the context of this case where the provocation and the evocative nature of the facts alone were as they were the prosecutors remarks in this case did not exceed the bounds of appropriate advocacy I do want to address mr. Berrigan's harmless error arguments you agree that it's a harmless error Chapman analysis yes your honor this is not a constitutional that due process was so overwhelmed that that that would go to a constitutional challenge so we agree that it would be a harmless error standard mr. Berrigan's entire defense was that he was effectively guilty of count one and therefore not guilty of count two and I want to break that down what mr. Berrigan's defense was I am a shot-caller for the Westside gang I report to Rudy Espudo a Mexican mafia member as a result there is no way I would have violated a peace treaty that had been imposed by a Mexican mafia member and ordered the shooting of Israel Murillo and as a result I am not guilty of counts to 12 and 13 that was mr. Berrigan's principal defense and you can find that at SCR 71 through 80 which is mr. Berrigan's opening remarks as well as in his closing on SCR 4195 4196 and 4214 I'll just briefly quote some parts parts of it SCR 75 mr. Lemon told the jury first of all the idea that mr. Berrigan would tell his gang to disregard Espudo's direct order is simply not credible you're going to hear a lot of testimony in this case that mr. Berrigan is a loyal serrano and you heard the government explain what a serrano is it's a Southern California gang member and if nothing else mr. Berrigan is a loyal serrano and you're going to hear a lot on that point but secondly the consequences for disloyalty are extreme basically if mr. Berrigan had told the gang members that he was responsible for ignoring what big homie said that's the Mexican mafia member that's a good good way to get them all killed not just mr. Berrigan but all of them in effect what mr. Berrigan did in his defense was embrace his guilt on count one that he was a part of the conspiracy enterprise for the Mexican mafia and as a result asked the jury not to convict him on counts 2 12 and 13 the prosecutors remarks were absolutely harmless in mr. Berrigan's context mr. Berrigan sentence he's got two arguments one is the grouping argument and the other one is the career offender argument on the career offender argument the question is what is the record show about his prior offenses you are correct he technically does have two prior PC 211 but the judge didn't rely on the judge instead relying on a 211 and an 11 379 right correct and that's because one of the PC 211 robbery convictions doesn't score okay good so for career offender purposes so I can there's only for our purposes there's only one to 11 conviction correct okay on the 11 379 conviction do you agree that's the issue that's now pending in Martinez Lopez so what should we assuming we don't vacate the sentence for some other reason we would we should defer submission on that issue on the grouping issue I think your brief agrees that the judge the judge shouldn't shouldn't have grouped the drug offenses separately that one guideline should have governed all right yeah okay why why wasn't why isn't that sufficient for us to send it back for resentencing it's not sufficient because the guideline that actually governs 360 to life is the maximum guideline that should have governed all counts well it's it but but the judge this is not a mandatory minimum right it was a mandatory minimum case so the judge has to give 360 to life in this case oh no your honor there was a mandatory minimum right so the judge could have conceivably departed downward yes your honor and don't our cases suggest that the way because it because of improper grouping we can't tell whether or not the judge might have exercised the discretion differently well no in this case we do know because the court calculated 360 to life for two counts and a lower guideline range of 262 to 127 months for the last count so there should have been just one guideline range you agree of 360 to life that governed every count and instead she had 360 to life that governed one count 360 to life that covered the second count and then a lower guideline range so your argument is that because she had one lower guideline range then it's clear that she wouldn't have exercised her discretion to go any lower than she did on the eventual sentence to the extent there's any procedural error it's absolutely harmless in this case because the guideline range is the highest guideline range that could be commanded under the career okay now I understand your argument yes moving on then from mr. Berrigan mr. Johnson represents Hector Fernandez as to mr. Enriquez again the principal cross from mr. Berrigan attorney was that mr. Enriquez committed heinous and violent acts there's two points that I would like to make with regard to mr. Enriquez one is that is what the Mexican Mafia does and that is what these defendants were alleged to and convicted of furthering the enterprise of the Mexican Mafia it was a violent enterprise and the jury heard about the violence that these defendants also committed including the drive-by shootings the robbery at the apartments as well as the robbery that and and so we would respectfully disagree that the 403 analysis would require the district court to exercise its discretion to exclude mr. Enriquez as testimony because it was entirely probative about whether the enterprise existed and what the contours of that enterprise were if we were to hypothetically find that there was error in the prosecutors summation and had to a harmless error analysis could you address you you talked about the evidence against mr. Berrigan can you talk about the evidence against mr. Fernandez is it stronger weaker the United States has spent the evidence was overwhelming against all of the defendants that are here today as for mr. Fernandez we know two things the prosecutors remarks and any other error in the trial would have been harmless because the jury acquitted him of one conclusion or just something we take into account it's something the court takes into consideration but it's powerful evidence that nothing that was prejudicial or harmful that the defendants contend led to a jury that was so overcome or overwhelmed by the evidence they felt propelled to convict in this case we have strong evidence that the jury did not which is that they acquitted mr. Fernandez of count six but in terms of the evidence that was the Diablos gang there was a cooperating witness and Adam Landeros who came in and testified about his activities as a shot-caller for the Diablos gang that's on SCR 4 3 4 5 through 4 4 2 2 which is where mr. Landeros testified he identified Hernandez or Fernandez keeps me as evil on 4 3 8 2 and a member of the Diablos gang he talked about how Rudy Espudo the Mexican mafia member was a former Diablos member and how he had called a meeting of all of the gang members so that they could discuss how they would further the activities of the Mexican mafia beyond the general evidence tying mr. Fernandez to the Diablos and the Diablos activities with the Mexican mafia the jury also heard and saw evidence that mr. Fernandez engaged in an extortion attempt of drug dealers at a Denny's in April of 2011 a confidential source went to Denny's along with mr. Fernandez another shot-caller for the Diablos and met with another shot-caller for the Barrios San Marcos gang the jury saw that evidence and heard mr. Fernandez say let's touch him up in regards to another drug dealer who wasn't paying taxes in other words let's go collect taxes on behalf of the Mexican mafia from this drug dealer the jury heard that the jury saw evidence of controlled substance purchases from mr. Fernandez in May of 2011 and then they heard witnesses civilians come in a marine whose face was battered and bruised because of the robbery that mr. Fernandez participated in and what the jury heard is that mr. Fernandez and his co-conspirators or enterprise members went and shouted out the gang named Diablos asked the individuals who were sitting at the Hidden Valley Middle School what gang they were a part of and then proceeded to beat them and rob them one of the witnesses civilian witnesses that came in testified and identified mr. Fernandez as the individual who spoke or talked the most who was also described as a person who had the bat so the jury heard all of that evidence which connected him to the enterprise activities and so we would submit that any harm that could be alleged from any error that occurred would have been absolutely harmless as demonstrated both by the verdict as well as the overwhelming nature of the address all of the other defendants and the evidence that was can I can I maybe take you out of order mr. mr. Aranda who pled guilty you you agree the sentence should be vacated and that the other issues may or may not arise on resentencing okay I'm happy to go through the evidence as it relates to the other defendants or to address the the wiretap the wiretap arguments that mr. or brought on behalf of mr. Gutierrez I do want to point out for the court two recent cases from this this court the Ninth Circuit that we think is dispositive of the wiretap argument that's United States versus Rodriguez it's at 851 f3rd 931 that was just decided this year by this court it is a full and complete statement of the investigative methods that the agents used as well as an abuse of discretion test for whether necessity existed we believe the district court here did not abuse its discretion which is firmly if what Rodriguez actually commands because they went through in that case the same sort of analysis to determine whether there was necessity as well as a full and complete statement and this case falls within the precise four corners of that case on the basis of Rodriguez the court also in United States versus Coda denied or affirmed the denial of a motion to suppress it that's at two zero one seven Westlaw two three six five two three nine I'm happy to submit a 28 J letter with would you please yes your honor but I think that disposes of the the wiretap challenges in their entirety I'm happy to address any questions specific questions this court may have about any of the other assignments of error but at the end we think in this case the evidence is overwhelming the nature of the facts that were alleged as well as the acts that the defendant committed were violent they were provocative they involved violence involving the most violent enterprise there is here in terms of the Mexican Mafia so the prosecutors remarks were fair the introduction of the evidence by mr. Enriquez was fair and the presentation of the evidence that the trial was fair and to the extent this court could quibble with any of anything that happened the evidence against each defendant a repellent here was overwhelming just so that my notes are correct you you agree that the sentence against mr. Gutierrez should be vacated yes your honor he was improperly designated as a career offender but we would urge this court to affirm or defer submission as to mr. Berrigan because of the 11379 and then we do think that the first second third sixth and seventh circuits have the better of the argument on the 1b 1.2 D so let's go back go back to mr. Berrigan for a second yes since we know the grouping that the judge shouldn't have grouped them separately your argument that that was harmless error and since we have a career offender issue out there is would it be preferable for us just to vacate the sentence let the judge fix the grouping and by the time by the time the judge if you if you're right the judge will just give the same sentence we will know with how the career offender stuff turns out as opposed to us holding on to the case that's what and we would respectfully disagree on that we think it would be appropriate to hold on and determine whether Martinez Lopez would confirm as we believe that 11379 is a controlled substance offense and that's because that will ultimately control that's ultimately the dispositive issue which is is 11379 a controlled substance offense because he's a career offender because his guidelines should have been 360 to life the United States admits that the 330 months that were imposed as the proper sentence and that there was no illegal error that would allow this court to remand it back to the district court just one quick question if I might it hasn't been argued here today but it's raised in the briefs that that's this the use of the police to testify as both expert witnesses and lay witnesses I gathered originally the government did qualify the officers as expert witnesses is that correct not that they were qualified the United States out of an abundance of caution provided notice so you did the disclosures that are required by the expert witness rule is that correct we provided notice notice yes your honor but ultimately what was elicited at trial and we agree with the district courts characterization of each of the opinions it was lay opinion testimony so based on the three detectives and officers or excuse me special agents that testified you had Ricardo Lopez who was the lead investigator in this case who testified about his opinions of ambiguous statements that were provided in recordings and he said that he was basing his opinion on 20,000 calls and texts that he had right the government's premise seems to be that if the particularized knowledge is acquired through experienced rather than education or specialized training the fact that his experience is the source the particularized knowledge means they're not expert witnesses is that is that the government's position it's experience it's connected to the investigation in this case so effectively they are percipient witnesses to the phone calls that are being made their percipient witnesses to the text as they come in and they in their investigative experience can provide lay opinions and that's precisely what this court in Gadsden held to the extent that their opinions are based on experience in other cases are they then not lay experts but but 701 experts no and that's what the court in Gadsden Freeman also confronted which is to the extent that the interpretation of ambiguous statements is from the investigation itself that it is lay opinion but certainly the expert doesn't come in as a newborn baby conducting the investigation there are things that the expert that the agent has done in the past that will inform what he does in the investigation to the extent that that's true are as the expert then not a lay expert but no he is he remains a lay expert under this court's precedent in United States versus Gadsden so Gadsden and Freeman in this case directly control when both held that a officer can interpret phone calls so long as the phone calls are ambiguous conversations based on the officers direct knowledge of the investigation and that's precisely the foundation that was laid for the agents who testified here unless the court is any further questions I was briefly council stated that the prosecutors arguments were fair so I if I can just touch on one of the comments that the prosecutor made was that the defendants had been touching the community with quite brutal force if there is no West Side gang if there is no Diablos going out and doing extortion and dealing drugs there is no Mexican mafia no Diablos no West Side no Mexican mafia on the streets in that community no robberies no shootings no meth on behalf of the enterprise without those two gangs no gangs that pledge their allegiance to that organization to pronounce it loud and proud no Mexican mafia the mafia isn't just about the made members of the Godfathers or the big homies it is about the people who are touching this community and sometimes touching it with quite brutal force no more and then the prosecutor just referenced the last remarks that were made during the closing argument saying hold them accountable find them guilty but what she neglects to mention is that in the paragraph immediately before it he again says no more so this was this was the theme of the closing argument with respect to harmless error as to Mr. Barragán I there's a difference between conceding that someone is a gang member or in fact a shot-caller and conceding that you're guilty of count one we never conceded guilt as to any of the counts the fact of the matter is the government established that Mr. Barragán was a as acknowledging that you're guilty of the count there were also additional counts the three separate drug counts that Mr. Barragán was convicted of here which brings me to the sentencing issue which again is that an accurate guidelines range is the starting point and it's the accurate range in this case should have been 260 something to I think if Mr. Barragán is a career offender right I assume that because that's separate but assume that is a range of 360 to life because my by my reading of I think it's 4d 1.2 if you have a lifetop for the offensive conviction any one of the I think two of the three drug convictions triggered an offense level third so the prosecutor's argument is that in effect he got a benefit from non-grouping because the the non-grouped range was lower than the one then the group drain should have I don't see how for incredibly high guidelines ranges three of them being 360 to life could be a benefit but the three if he was a career offender the three of them were correct should have been one right so what I'm trying to figure out is why is the the number of correct guideline ranges harmful to you when combined with a guideline range that was lower than it should have been because I think it's impossible to say that as a sentencing court the judge wasn't looking at four guidelines and saying my gosh there are four guidelines here they're all extraordinarily high three of them are at the absolute top therefore I'm going to take that into account when I decide to vary under 35 53 a and so there should be that that's why this court always reverses when there is an error in the guidelines calculation there's supposed to be one guidelines range and it's supposed to be accurate here we had four guidelines ranges it was unfair to mr. Berrigan because it could have affected the variance that the district court decided to impose okay we'll give you a minute mr. Johnson that evidence against mr. Fernandez was overwhelming it simply was not and you can tell that by the prosecutor's closing argument and by the evidence introduced and argued and this goes to the confrontation clause issue which is the informant who is on the tape saying about mr. Fernandez mr. Fernandez was not present that evil set this meeting up I've known evil since before he was a gangster he set it up he set it up that's the only evidence involved in this case that reflects on mr. Fernandez having anything to do with setting up a meeting and then the government argues it in closing at supplement SCR 4222 Hector Fernandez was a man who was setting this stuff up with other gangs that's their argument it was a very weak case and the reason is it so the in allowing the use of this informant testimony I gather the court told the evidence is that correct that's correct but but then you're saying that despite that statement from the court the prosecution used it well as evidence in its closing the prosecution argued that Hector Fernandez was a man who was setting this stuff up with other gangs the only evidence that he was setting up stuff with other gangs it was the informants yes oh no no I'm sorry I did no I mean that's I didn't think that issue was raised my argument is still there was a confrontation clause right so assuming there was no confrontation clause violation you didn't make a separate argument that there wasn't the prosecutor shouldn't have attempted to use it for the truth of the matter I did not okay and which brings us back again to the Enriquez testimony and how damaging it was in this case that if they're saying that Hector Fernandez is a person who was setting up meetings really with only hearsay evidence of that violated the confrontation clause and if the evidence was that he was a member of a local street gang not that he was a member of the Mexican mafia that makes bringing in the this violent in a it's really difficult to under to overstate just how violent in vile boxer Enriquez was where he spread out plastic sheets in his car so his friends brains wouldn't stain his car when he executed him and he took pleasure in that you know that was totally unnecessary and that caused the fear in the courtroom that contributed to the conviction of the inchoate crime which was the conspiracy to commit conspiracy which is a RICO offense and for those reasons that Mr. Fernandez was prejudiced in that and I'll submit the rest of my case thank you very much the cases of Barragan Fernandez Gutierrez Franco Naranda will be submitted we thank counsel for their very illuminating argument
judges: Lipez, Bea, Hurwitz